# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| **United States of America** | |
| v. | Case No. 25-mj-1331 |
| **ANTONIO MARTINEZ,**<br>**DOMINIC DANIELS** | |
| *Defendants* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT I
### (Possession with Intent to Distribute Fentanyl)

On or about June 25, 2025, in the County of Erie, in the Western District of New York, the defendant, **ANTONIO MARTINEZ**, did knowingly and intentionally possess with intent to distribute 400 grams or more of a mixture or substance containing N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl), a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).**

### COUNT II
### (Possession with Intent to Distribute Fentanyl)

On or about June 25, 2025, in the County of Erie, in the Western District of New York, the defendant, **DOMINIC DANIELS**, did knowingly and intentionally possess with intent to distribute 40 grams or more of a mixture or substance containing N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl), a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).**

### COUNT III
### (Possession with Intent to Distribute Cocaine Base)

On or about June 25, 2025, in the County of Erie, in the Western District of New York, the defendant, **DOMINIC DANIELS**, did knowingly and intentionally possess with intent to distribute cocaine base, a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).**

## COUNT IV

**(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)**

On or about June 25, 2025, in the County of Erie, in the Western District of New York, the defendant, **DOMINIC DANIELS**, in furtherance of drug trafficking crimes for which he may be prosecuted in a court of the United States, that is, violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), committed in the manner set forth in Counts II and III, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess a firearm, namely, one Taurus 9mm G2C pistol, bearing serial number ACL579781.

**All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).**

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*
CURTIS MIDDLEBROOKS
SPECIAL AGENT
Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed telephonically.

Date: June 25, 2025

*Judge's signature*
HONORABLE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and State: Buffalo, New York

2

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

STATE OF NEW YORK        )
COUNTY OF ERIE           )    SS:
CITY OF BUFFALO          )

## I.   INTRODUCTION

1.   I, Curtis R. Middlebrooks, am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since July of 2020. I have received basic drug, gang, criminal enterprise, and Title-III wiretaps investigative training at the FBI Training Academy located in Quantico, Virginia. I have served as an FBI Special Agent since July of 2020. Prior to my employment as a Special Agent with the FBI, I was employed as a United States Probation Officer (USPO) in the Western District of New York from July of 2009 through July of 2020. During my career, I have participated in investigations involving violent crime, firearms trafficking, drug trafficking networks, organized crime, and neighborhood-based street gangs. I have had the opportunity to work with several other FBI agents and other law enforcement agents and officers of varying experience levels, who have also investigated drug trafficking networks, with regard to the manner in which controlled substances are obtained, diluted, packaged, distributed, sold and used within the framework of drug trafficking in the Western District of New York, the District of Massachusetts, and the Northern District of West Virginia. In addition, I have had the opportunity to work with several other FBI agents

and other law enforcement agents and officers of varying experience levels, who have also investigated violent crime, firearms trafficking, drug trafficking networks, organized crime, and neighborhood-based street gangs in the Western District of New York, the District of Massachusetts, and the Northern District of West Virginia. As a result of my training and experience, and as a result of the information shared by my experienced colleagues, I am familiar with how individuals and associates possess and utilize firearms in crimes of violence and in the violent defense of themselves and their associates in the context of their drug-trafficking and gang-related activity. My investigative experience detailed herein, and the experience of other law enforcement agents who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein. During my tenure with the USPO and FBI, I have executed State and Federal search warrants in narcotics and firearms-related investigations.

2.  My current assignment requires extensive knowledge of matters related to illegal drug trafficking and violent gang activity in the Western District of New York. As part of my duties as a Special Agent, I investigate criminal activity related to drug trafficking, in violation of, among other statutes, 21 U.S.C. § 841(a)(1), and firearms possession in furtherance of drug trafficking, in violation of, among other statutes, 21 U.S.C. § 924(c). My experience includes, but is not limited to, conducting surveillance, interviewing witnesses, conducting database checks, analyzing telephone records, writing affidavits for search warrants and Title III wiretap investigations, executing search warrants, and working with undercover agents and informants. I am familiar with matters including, but not limited to, the means and methods used by drug trafficking organizations to purchase, transport, store,

and distribute drugs, and the concealing of profits generated from those transactions. Through my training and experience, I have become familiar with the methods of operations typically utilized by individuals who distribute drugs. I know that it is common practice for drug traffickers to routinely utilize vehicles, rental vehicles, telephones, mobile phones, prepaid phones, calling cards, public telephones, text messaging, counter-surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators for the purpose of insulating themselves from the detection of law enforcement. Moreover, it is not unusual for them to initiate such mobile or prepaid phone service in the name of an associate or family member or in the name of a fictitious individual. The individuals often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, and distributing controlled substances, and for arranging the concealment of proceeds derived from the sale of controlled substances.

3. This affidavit is being submitted for a limited purpose, that is, a probable cause determination. Therefore, I have not presented all of the facts of this investigation to date. I have set forth only the information I believe to be necessary to establish probable cause. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this manner.

4. I make this affidavit in support a criminal complaint charging **ANTONIO MARTINEZ** ("**MARTINEZ**") and **DOMINIC DANIELS** ("**DANIELS**") with violating the following:

   a. **MARTINEZ**: Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) (possession with intent to distribute 400 grams or more of a mixture or substance containing fentanyl, a Schedule II controlled substance) (the "Martinez Target Offense").

   b. **DANIELS**: Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) (possession with intent to distribute 40 grams or more of a mixture or substance containing fentanyl, a Schedule II controlled substance, and 28 grams or more of cocaine base, a Schedule II controlled substance); and Title 18, United States Code, Section 924(c)(1)(A)(i) (possession of a firearm in furtherance of a drug trafficking crime) (together, the "Daniels Target Offenses").

## PROBABLE CAUSE

5. As part of an ongoing narcotics trafficking investigation, the Buffalo FBI Safe Streets Task Force (SSTF) and the Erie County Sheriff's Office (ECSO), began investigating narcotics activity conducted in Buffalo, New York. Through investigative means, including recent controlled purchases of narcotics, **ANTONIO MARTINEZ** and **DOMINIC DANIELS** were identified as individuals believed to be engaged in narcotics trafficking.

6. **ANTONIO MARTINEZ** has a history of firearms possession and violence. On September 6, 2002, **MARTINEZ** was convicted, upon plea of guilty, of third degree assault with intent to cause physical injury (a Class D felony). On March 5, 2004, **MARTINEZ** was sentenced to one year of imprisonment. On October 31, 2008, **MARTINEZ** was convicted, upon plea of guilty, of attempted criminal possession of a

4

weapon, second degree, possessing a firearm in a location other than the person's home or business (a Class D felony) and was sentenced to a two (2) years consecutive prison sentence.

7.  **DOMINIC DANIELS** has a history of narcotics distribution. On October 21, 2016, **DANIELS** was convicted upon plea of guilty to second degree attempted criminal possession of a weapon, loaded firearm other than a person's home or business. **DANIELS** was sentenced to five years' probation on January 6, 2017. On January 6, 2017, **DANIELS** was convicted, upon plea of guilty, of criminal possession of a controlled substance (a Class B felony). The same day, **DANIELS** was sentenced to five years' probation with 100 hours of community service. On October 25, 2018, **DANIELS** was convicted upon plea of guilty of violating Title 21 United States Code, Sections 846, 841(a)(1), and 841(b)(1)(B), and sentenced to 60 months incarceration to be followed by four (4) years' Supervised Release.[1] *See* 17-CR-129-002.

8.  On June 18, 2025, an ECSO detective applied for a search warrant for certain residences, vehicles, and individuals associated with this investigation. Specifically, law enforcement applied for search warrants for, *inter alia*:

   a. **229 Townsend Street**, Buffalo NY 14212 (entire residence), a residence that ECSO learned through surveillance and confidential source information was utilized by **MARTINEZ** and **DANIELS** to conduct narcotics transactions;

   b. **251 Townsend Street**, Buffalo NY 14212 (lower rear apartment), a residence ECSO has associated with **DANIELS**;

---

[1] Related to this sentence, **DOMINIC DANIELS** is presently serving his term of supervised release, the terms of which include a warrantless search condition.

5

    c.    **26 Easton Avenue**, Buffalo NY 14215 (upper apartment), a residence ECSO has associated with **MARTINEZ and DANIELS**;

    d.    A Tesla bearing New York registration LNR8132 registered to **DANIELS (DANIELS' Vehicle)**;

    e.    The person of **DANIELS**;

    f.    The person of **MARTINEZ**;

The warrants were issued by the Honorable Kenneth Case, Erie County Court.

9.    On June 25, 2025, members of the Buffalo Police Department, ECSO, and FBI SSTF, executed the state search warrant at 26 Easton Avenue, Upper, Buffalo, New York (**MARTINEZ's Residence**). As noted above, ECSO has associated this residence with **MARTINEZ**. Specifically: (i) law enforcement conducted a utilities check of 26 Easton Avenue—the utilities are in MARTINEZ's name; (ii) ECSO investigators have observed **MARTINEZ** enter and exit 26 Easton Avenue on several occasions; (iii) on June 16, 2025, Cheektowaga Police Department received a domestic violence complaint at 26 Easton Avenue regarding **MARTINEZ;** and (iv) ECSO confidential source information indicated that **MARTINEZ** packages narcotics at his home, which ECSO determined through the aforementioned investigative steps was 26 Easton Avenue.

10.    Earlier this year, on January 3, 2025, Your Affiant sought and obtained a search warrant for a UPS parcel destined for **MARTINEZ's Residence** at 26 Easton Avenue, Upper, Buffalo, New York. *See* 25-MJ-3. At that time, FBI-SSTF investigators also determined that 26 Easton Avenue, Upper was **MARTINEZ's Residence** through independent investigative steps. Pursuant to the search warrant, investigators found 1305.6

grams of fentanyl pills inside of the parcel. The suspected fentanyl pills were sent to the Drug Enforcement Administration's Laboratory (the "DEA Lab"), which confirmed the presence of N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II controlled substance. Investigators removed the suspected fentanyl pills and attempted a controlled delivery of sham narcotics on January 7, 2025. However, no one retrieved the package once it was delivered.

11. When law enforcement executed the search at **MARTINEZ's Residence** on June 25, 2025, **MARTINEZ** was the sole occupant of the residence. During the search of **MARTINEZ's Residence**, investigators found approximately 2,093 grams of suspected fentanyl, approximately 144 grams of suspected fentanyl pills, cutting agent, packaging materials, and a scale with suspected fentanyl residue. The suspected fentanyl was field tested utilizing a Trunarc device, which returned positive results for the presence of fentanyl.[2] Based on my training and experience, as well as my involvement in the ongoing investigation, I believe the suspected fentanyl pills are similar in appearance and content to those seized in January of 2025. Law enforcement also seized one (1) cellular phone in **MARTINEZ's Residence**.

12. On June 25, 2025, officers from the United States Probation Office (USPO) and the ECSO also conducted a Probation search of **DANIELS**'s reported residence, 501 Emslie

---

[2] The suspected fentanyl has been sent to the Erie County Central Police Services Laboratory (CPS Lab) for confirmation.

St., Buffalo, New York (**DANIELS's Residence**) pursuant to DANIELS' conditions of supervise release, as well as **DANIELS' Vehicle**.

13. When law enforcement executed the search at **DANIELS' Residence**, **DANIELS** answered the door for law enforcement. Although law enforcement did not find narcotics during the search of **DANIELS' Residence**, law enforcement did seize approximately $16,000 of suspected narcotics proceeds and five cellular telephones.[3] During the search of **DANIELS' Vehicle**, investigators seized approximately 130 grams of suspected fentanyl, approximately 38.4 grams of crack cocaine, and a loaded Taurus 9mm G2C pistol ACL579781 with an extended magazine.[4] The suspected crack cocaine was field tested utilizing a Trunarc and returned positive results for the presence of cocaine base.[5] Given how the suspected fentanyl was packaged, law enforcement did not field test it at this time. However, based upon my training and experience, the suspected fentanyl was consistent with the appearance of fentanyl. Moreover, based on my training and experience working narcotics investigations, I believe that the suspected narcotics found in **DANIELS' Vehicle** were packaged for distribution.

---

[3] During the search of **DANIELS's Residence**, law enforcement seized a loaded Smith and Wesson .308 M&P Shield bearing serial number NMX0271, which was registered to **DANIELS's** mother.

[4] The listed items were all located inside of the glove box of **DANIELS' Vehicle**.

[5] Law enforcement sent the suspected cocaine base to the Erie County Central Police Services Laboratory for analysis.

14. Throughout the ongoing investigation, investigators have observed **DANIELS' Vehicle** at **MARTINEZ's Residence** on several occasions. Additionally, based on my involvement in the ongoing investigation, I believe that the packaging materials and writing on the packaging material found in **DANIELS' Vehicle** matches the packaging material and writing on packaging material found in **MARTINEZ's Residence**.



Suspected narcotics seized from **DANIELS' Vehicle**.



Writing from **MARTINEZ's Residence**.



Packaging material from **MARTINEZ's Residence**.

15. **WHEREFORE**, based upon the foregoing, I respectfully submit that there is probable cause to believe that **ANTONIO MARTINEZ** violated the Martinez Target Offense, and **DOMINIC DANIELS** violated the Daniels Target Offenses, and request that the Court issue a Criminal Complaint and arrest warrants.

*Curtis R. Middlebrooks*
CURTIS R. MIDDLEBROOKS
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed telephonically
this 25th day of June, 2025.

_____
HONORABLE JEREMIAH J. McCARTHY
United States Magistrate Judge

11